UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

*In re*

JAMES JOEL HOLMAN and CANDICE
EVANGELINE HOLMAN,

Debtors.

Case No.  14-35381-rld7

DWIGHT and LAURA DANIELS,
husband and wife,

Plaintiffs,

v.

JAMES JOEL HOLMAN and CANDICE
EVANGELINE HOLMAN,

Defendants.

Adversary Proceeding No. 14-03285-rld

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO AMEND
FINDINGS AND MOTION TO EXTEND
STAY**

Creditors/Plaintiffs Dwight Daniels and Laura Daniels ("Daniels") filed their response to

Defendant, James Joel Holman ("Holman") Motion to Amend Findings as stated as follows:

## **HOLMANS' CERTIFICATION**

In his Motion To Amend Findings, Holman certifies that pursuant to LBR 7007-1(a)(1),

his counsel made a good faith effort to confer with counsel for Plaintiff but has not been able to

do so. LBR 7007-1(a)(1) mandates that the movant must certify either:

> (A)  That the parties made a good faith effort through personal
> or telephone conferences to resolve the dispute  but have
> been unable to do so;

> (B)  The movant made reasonable efforts to confer and the
> opposing party refused, including the description of the
> efforts made;

> (C)  The movant or opposing parties is a prisoner not
> represented by an attorney.

Page 1 PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
  TO AMEND FINDINGS

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

In fact, counsel for Holman made no effort to confer either by telephone or personal conference. The only effort made was an email sent to counsel for Plaintiffs at 11:00 a.m. Less than five (5) hours later at 4:11 p.m., Holmans' Motion to Amend Findings was filed and at 4:13 p.m., Holmans' Motion to Stay Enforcement of Judgment was filed. See Exhibit 1 to Declaration of R. Hunter Bitner, II. Holman did not meet the requirements of LBR 7007-1(a)(1).

## FACTUAL BACKGROUND

Defendants' motion involves a trial that took place on August 13, 2015 between Dwight and Laura Daniels as Plaintiffs and James Joel and Candice Evangeline Holman as Defendants. The Daniels asserted exceptions to discharge claims against the Holmans under 11 USC §523(a)(2)(A) and 523(a)(2)(B). Prior to trial, Summary Judgment was entered in favor of Mrs. Holman on the Daniels' 523(a)(2)(A) claim. After the trial, judgment was entered on behalf of Plaintiffs excepting Mr. Holman's debt under 523(a)(2)(B) and entering judgment on behalf of Defendant Holman on the Plaintiffs' claim under 523(a)(2)(A) and in favor of Candice Holman under 523(a)(2)(B). That judgment was filed on September 8, 2015. See Exhibit 2 to the Declaration of R. Hunter Bitner, II. Defendant James Holman has now filed a motion to amend the findings, specifically as found on pages 15-16 of the Memorandum Opinion. *See* Holman's Motion to Amend Findings. Those are the only findings Holman's motion addresses. Holman's memorandum addresses, as an aside, findings on page 17 but as the motion does not address it, Holman has not requested any other amendments.

## POINTS AND AUTHORITIES

### Standard And Burden

It is also unclear what rule Holman is proceeding under as there is no reference to any Rule of Civil Procedure or any other statute or ordinance within Holman's motion or memorandum. However, given the terminology used, it is assumed that Holman is preceding under FRCP 52(b), which allows a party to move the court to amend its findings or make additional findings.

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

Motions under Rule 52(b) are designed to correct manifest error in findings of fact, which are central to the ultimate decision; however, the rule is not intended to serve as a vehicle for a rehearing. *See, United States v. State of Or.,* 666 F. Supp. 1461, 1466 (D. Or. 1987); *Davis v. Mathews,* 450 F. Supp. 308 (E.D. Cal. 1978). Recognized grounds for such a motion include manifest error of fact or law by the trial court, newly discovered evidence, or a change in the law. *See, Leishman v. Associated Wholesale Electric Co.,* 318 U.S. 203, 63 S. Ct. 543, 544 87 L.Ed. 714 (1943) *reh'g denied.* 318 U.S. 800, 63 S. Ct. 758, 87 L. Ed. 1163; *Gutierrez v. Ashcroft,* 289 F. Supp. 2d 555 (DNJ 2003) *aff'd on other grounds sub nom Gutierrez v. Gonzalez,* 125 F. App'x 406 (3d Cir. 2005); *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999) (setting forth grounds for reconsideration under Civil Rule 59(e)); *see also* Rules 7052 and 9023 (applying Civil Rule 52 and 59 to bankruptcy proceedings).

A party may not attempt to introduce as "newly discovered evidence" that was available at trial but not introduced or make arguments that were likewise available at trial. *See, In re Jim Slemons Hawaii, Inc.,* No. BAP HI-11-1464, 2013 WL 980115, at *15 (B.A.P. 9th Cir. Mar. 13, 2013), *aff'd,* 584 F. App'x 671 (9th Cir. 2014); *U.S. v. Local 1804-1, International Longshoreman's Assoc.,* 831 F. Supp 167 (S.D.N.Y. 1993). Nor are parties to use the rule to allow parties to present their case under new theories. See *Diebitz v. Arreola,* 834 F. Supp. 298 (ED Wisconsin 1993). Additionally, a motion to amend should not be granted where the proposed additional findings of fact are not material to the court's conclusions. *Elkins v. McGee,* 1987 WL 181520*1, 1987 US Dist LEXIS 12589*3 (D. Kan. Sept. 9, 1987); *Rank v. Krug,* 155 F. Supp. 872 (SD Cal. 1957).

## Application

As noted above, a Rule 52(b) motion cannot be used to introduce newly discovered evidence which was available at trial but not introduced or to serve as a broad effort to reshape findings of the court creating findings more favorable to the movant rather than more accurate for purposes of appellate review. Additionally such a motion may not be used to raise arguments

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

1  which could have been made in advance of the prior court's ruling. *Diocese of Winona v.*
2  *Interstate Fire and Casualty Company,* 89 F.3d 1386 (8th Cir. 1996); *Diebitz v. Arreola, supra.*
3  That is precisely what Holman is attempting to do with his motion.

4      Simply put, Holman is now attempting to change is testimony; testimony that was taken
5  under oath during the adversary proceeding on August 13, 2015. Both Plaintiffs' counsel and the
6  Court asked Mr. Holman about the value of his business and how he came to evaluate it. At best,
7  he testified that he was basing his value off of an evaluation that had been done "a year or two
8  prior." Additionally, as admitted in his own motion, Holman was asked by the Court whether
9  the $5,000,000 amount listed in the financial statement was the gross value of Defendant's
10  company to which he replied in the affirmative.

11      In fact, the issue was brought up numerous times during trial and Holman either testified
12  consistently or made no objection or clarification.

13
14      Q:    You see under assets, closely held business, do you see
              that?

15      A:    Yes

16      Q:    $5 million, right?

17      A:    Yes.

18
19      Q:    What does that number represent?

20      A:    That represents what the assets of that business were in
              terms of worth, I suppose.

21      Q:    What business are we talking about?

22
23      A:    For us, in my mind, that would of represented our PCS, all
              the PCS entities.

24      Q:    Is that your net value worth, or is that a gross worth?

25
26      A:    That is what I believe would be more of the gross. It's
              worth the gross.

Page 4 PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
        TO AMEND FINDINGS

**SLINDE NELSON STANFORD**
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

1 Transcript of proceedings before the Honorable Randall C. Dunn, August 13 2015, page 160 line

2 25- page 161 line 14; *see also* page 167 line 5- page 168 line 3; page 309 lines 11-14; page 313

3 lines 1-4; page 326 lines 15-20. In other words, Holman had a plethora of opportunities to

4 explain his testimony or understanding and failed to do so.

5 Holman now is attempting to "take it back" and explain to the Court that he meant

6 something completely different. This is not what a Rule 52(b) motion is for. In support of his

7 "new story" Holman attaches an appraisal done on his company from seven (7) years ago.

8 Plaintiffs would posit that an appraisal from 2008 is hardly relevant regarding the value of the

9 business years later. Regardless, this is not "newly discovered evidence". This evidence was

10 more than available to the Holmans at the time of trial and was never entered. As noted above, a

11 Rule 52(b) motion is not a vehicle in which a party can attempt to introduce "newly discovered

12 evidence" which was available at trial but not introduced. See *U.S. v. Local 1804-1, supra;*

13 *Davis v. Mathews, supra.*

14 As explained by the Court in its Memorandum Opinion, the Judge listened carefully to

15 witness testimony and the arguments of counsel and took copious notes. Additionally, the Court

16 reviewed admitted exhibits and the parties' trial memoranda. The Court took Mr. Holman at his

17 word and made specific findings of fact therefrom. It is too late for Mr. Holman to "take it back"

18 or try to change or explain his testimony. Moreover, the Court made it clear that it found that the

19 circumstances taken into consideration concluded that Mr. Holman apparently had exhausted his

20 possibilities for obtaining more conventional findings and acted recklessly, among other

21 findings. See Memorandum Opinion pages 16-17.

22 Additionally, the court identified other bases to find reckless indifference or fraud on

23 Holman's' behalf. For example, the Court found that the mortgage balance against the Holmans'

24 home stated on the financial statement reinforced that point. Specifically, his statement stating

25 that the mortgage balance was $450,000 when the Trust Deed balance owed at the time actually

26 totaled over $542,000, was recklessly indifferent to the truth when he had ready access to the

Page 5 PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO AMEND FINDINGS

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

1    current monthly statements as the person responsible for paying the bills and as pointed out by

2    Holman's counsel in the motion at issue, he "periodically" reviewed the bills.

3    *Id.* at page 175 line 4- page 176 line 19.

4-5  Mr. Heatherman:    He also testified that he reviewed some
                        mortgage statements.

6    Mr. Bitner:    I am going to absolutely have to object to that.

7-9  The Court:    No, he did not, because the amount that was owed
                   on the two mortgages was approximately $100,000
                   off so he did not review the statements. His number
                   was based on his recollection; it was a general
                   recollection. That was what he testified.

10   *Id.* at page 223 lines 13-22

12-13    Q:    At during the time back in 2011, early'11, when you have
               prepared the PFS, were you receiving mortgage statements?

14   A:    Yes

15   Q:    On a periodic basis were you reviewing them?

16   A:    Yes

17   *Id.* at page 226 lines 11-17

18-19    Q:    I am now asking; did you have any actual knowledge when
               you wrote down or typed in $450,000 that is was true?

20-21    A:    Specific to that, no.

22   *Id.* at page 252 lines 4-7

23   Moreover, as admitted during trial, Mr. Holman actually utilized those very bills in

24   responding to Plaintiffs' Interrogatories and it is clear that the court took that into consideration:

25   Q:    How did you determine that was the balance?

26   A:    In terms of our response to interrogatories?

**SLINDE NELSON STANFORD**
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

| | |
|---|---|
| 1 | Q: Yes sir. |
| 2 | A: Answer this interrogatory, we got statements. |
| 3 | Q: Mortgage statements? |
| 4 | A: Yes |
| 5 | |

*Id.* at page 176 line 20- page 177 line 1; *see also,* page 318 lines 8-18.

Holman now points out that he "occasionally reviewed the mortgage statements". Frankly, this does not overcome testimony at trial that Holman completely ignored the mortgage statements at the time he prepared the financial statement. Again, Holman had every opportunity to clarify any of his testimony and did not do so. Therefore, the proposed additional or amended findings of fact are not material to the Court's ultimate conclusions in this matter.

It is unclear whether Holman is asking for some amendment regarding the findings regarding the mortgage balance. However, for the reasons explained above, there is absolutely no basis for doing so.

For the reasons stated above, there is no reason to grant Defendants' Motion to Amend the Findings of page 15 and 16 of the Court's Memorandum as Mr. Holman testified without hesitation concerning the value of his business and cannot now change his testimony and offer new evidence to the Court which existed as of the time of trial. Holman's motion is no more than a thinly veiled attempt to reshape the findings of the Bankruptcy Court creating findings more favorable to himself rather than more accurate for purposes of appellate review. A Rule 52(b) motion is not to be used to obtain a rehearing on the merits in order to litigate old questions which is exactly what Holman is attempting to do here. Additionally, this type of motion may not be used to raise arguments which could have been made in advance of the Court's ruling.

> "In addition, CIC had ample opportunity to make a record of its legal arguments to its liking on the issue, but did not do so until after the fact. There were also no grounds for reconsideration—CIC did not present newly discovered evidence, demonstrate clear error, or show an intervening change in controlling law. *See Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1219 (5th Cir.1986) (a motion to amend

Page 7 PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO AMEND FINDINGS

**SLINDE NELSON STANFORD**
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

under Rule 52(b) is intended "to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence."); *389 Orange St. Partners v. Arnold,* 179 F.3d 656, 665 (9th Cir.1999) (setting forth grounds for reconsideration under Civil Rule 59(e)); *see also* Rules 7052 and 9023 (applying Civil Rule 52 and 59 to bankruptcy proceedings)."

*In re Jim Slemons Hawaii, Inc., supra.*

## **HOLMAN'S MOTION TO STAY THE ENFORCEMENT OF THE JUDGMENT**

Based on the foregoing, there is no basis for staying the enforcement of the judgment entered on September 8, 2015. Holman has not identified any manifest error of fact or law, newly discovered evidence or a change in the law and therefore there is no basis for the requested stay.

## **CONCLUSION**

Based on the foregoing, Plaintiffs request that Holman's Motion to Amend the Findings to Stay the Enforcement of Judgment be summarily denied.


DATED: October 6, 2015.



SLINDE NELSON STANFORD


By:   /s/ R. Hunter Bitner II
    R. Hunter Bitner, II, OSB No. 011146
    hunter@slindenelson.com
    Darian A. Stanford, OSB No. 994491
    darian@slindenelson.com
    Slinde Nelson Stanford
    111 SW Fifth Avenue, Suite 1940
    Portland, OR 97204
    Phone: (503) 417-7777
    Fax: (503) 417-4250
    *Of Attorneys for Dwight and Laura Daniels*

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

**CERTIFICATE OF SERVICE**

I hereby certify that I served the attached **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO AMEND FINDINGS** on the following person(s) on the date indicated below:

Paul B. Heatherman
Law Offices of Paul Heatherman PC
250 NW Franklin Ave, #402
Bend, OR 97701
    *Of Attorneys for Debtors-Defendants*

By the following indicated method(s):

☐  By **emailing** full, true, and correct copies thereof to say attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☒  By notice of electronic filing using the PACER ECF filing system.

☐  By causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address (as) listed above on the date set forth below.

DATED: October 6, 2015.

                    SLINDE NELSON STANFORD

                    By: __/s/ R. Hunter Bitner II_____
                        R. Hunter Bitner, II, OSB No. 011146
                        Darian A. Stanford, OSB No. 994491
                        *Of Attorneys for Dwight and Laura Daniels*

**SLINDE NELSON STANFORD**
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

1

2

3

4

5 UNITED STATES BANKRUPTCY COURT

6 DISTRICT OF OREGON

7 *In re*

8 JAMES JOEL HOLMAN and CANDICE
EVANGELINE HOLMAN,
9
Debtors.
10

Case No. 14-35381-rld7

11 DWIGHT and LAURA DANIELS,
husband and wife,
12
Plaintiffs,
13 v.

14 JAMES JOEL HOLMAN and CANDICE
EVANGELINE HOLMAN,
15
Defendants.
16

17

Adversary Proceeding No. 14-03285-rld

**DECLARATION OF R. HUNTER BITNER
II IN SUPPORT OF
CREDITORS'/PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION TO AMEND
FINDINGS AND MOTION TO EXTEND
STAY**

18     I, R. Hunter Bitner II, declare as follows:

19     1.     I am one of the attorneys representing Dwight and Laura Daniels, Plaintiffs, in the

20 above captioned lawsuit.

21     2.     Attached as Exhibit 1 are true and accurate copies of an email from counsel for

22 Holmans, and notifications of the filing of Holmans' Motion to Amend Findings and Motion to

23 Stay Enforcement of Judgment.

24     3.     Attached as Exhibit 2 is a true and accurate copy of the Judgment filed and entered

25 in this matter.

26 Page 1 – DECLARATION OF R. HUNTER BITNER, II IN
SUPPORT OF CREDITORS'/PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION TO AMEND FINDINGS
AND MOTION TO EXTEND STAY

SLINDE NELSON STANFORD
111 SW 5th Avenue, Suite 1940
Portland, Oregon 97204
p. 503.417.7777; f. 503.417.4250

1    4.    Attached as Exhibit 3 are true and accurate copies of the portions of the trial

2    transcript from the trial of August 13, 2015.

3

4        I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST

5    OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE

6    AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.

7

8        DATED: October 6, 2015.

9

10                                          SLINDE NELSON STANFORD

11

12                                   By: /s/ R. Hunter Bitner, II
                                          Darian A. Stanford, OSB No. 994491
13                                        R. Hunter Bitner, II, OSB No. 011146
                                          *Of Attorneys for Dwight and Laura*
14                                        *Daniels*

15

16

17

18

19

20

21

22

23

24

25

26   Page 2 – DECLARATION OF R. HUNTER BITNER, II IN          **SLINDE NELSON STANFORD**
         SUPPORT OF CREDITORS'/PLAINTIFFS' RESPONSE          111 SW 5th Avenue, Suite 1940
         TO DEFENDANTS' MOTION TO AMEND FINDINGS             Portland, Oregon 97204
         AND MOTION TO EXTEND STAY                           p. 503.417.7777; f. 503.417.4250

**Subject:** Daniel v Holman

**Date:** Tuesday, September 22, 2015 at 11:33:34 AM Pacific Daylight Time

**From:** Law Office of Paul Heatherman PC

**To:** 'Hunter Bitner', darian@slindenelson.com

Hunter and Darian:

In an attempt to confer, attached please find a motion to amend findings and supporting documentation. I plan to file later this afternoon.

Sincerely,
Paul
Law Office of Paul Heatherman PC
www.bendattorneys.com
Phone: 541-389-1010
Fax: 541-382-6875

CONFIDENTIALITY NOTE: The information contained in this email is confidential and is intended only for the use of the individual(s) named above and is covered by the Electronic Communications Privacy Act, 18 USC §§ 2510-2521. If the reader of this message is not the intended recipient, you are hereby notified that any retention, dissemination, distribution or copying of this communication is strictly prohibited. It is the sender's intent that the attorney-client privilege be preserved. If you have received this communication in error, please immediately notify us via email. Thank you.

EXHIBIT 1
Case 14-03285-rld    Doc 63    Filed 10/06/15

**Subject:** 14-03285-rld ap Motion to Amend

**Date:** Tuesday, September 22, 2015 at 4:11:36 PM Pacific Daylight Time

**From:** BKECF_LiveDB@orb.uscourts.gov

**To:** BNC_orb@orb.uscourts.gov

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

### U.S. Bankruptcy Court

### District of Oregon

Notice of Electronic Filing

The following transaction was received from PAUL B HEATHERMAN entered on 9/22/2015 at 4:11 PM PDT and filed on 9/22/2015

**Case Name:**     Daniels et al v. Holman et al

**Case Number:**     14-03285-rld

**Document Number:** 52

**Docket Text:**
Motion to Amend *Findings* and Supporting Document(s). Filed by Defendant James Joel Holman Re: [48] Opinion (HEATHERMAN, PAUL)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Data\LINDA2\PAUL\Holman Appeal\holman.motion amend findings.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=994365958 [Date=9/22/2015] [FileNumber=15940145-0
] [69deafd23925cf645bb7916569e27e3a21a4c1460e4800fab9afab0818f3fcc4929
aaaeb82ebb870e8d62f32278c88c92f4a6f8d8f098e45d6344c7619df3046]]

**14-03285-rld Notice will be electronically mailed via ECF to:**

R HUNTER BITNER, III on behalf of Plaintiff Dwight Daniels
hunter@slindenelson.com

R HUNTER BITNER, III on behalf of Plaintiff Laura Daniels
hunter@slindenelson.com

PAUL B HEATHERMAN on behalf of Defendant Candice Evangeline Holman
ljkerr@bendbroadband.com, paul@bendattorneys.com

PAUL B HEATHERMAN on behalf of Defendant James Joel Holman
ljkerr@bendbroadband.com, paul@bendattorneys.com

DARIAN STANFORD on behalf of Plaintiff Dwight Daniels
darian@slindenelson.com, Amanda@slindenelson.com

**EXHIBIT 1**
Case 14-03285-rld    Doc 63    Filed 10/06/15

DARIAN STANFORD on behalf of Plaintiff Laura Daniels
darian@slindenelson.com, Amanda@slindenelson.com

**14-03285-rld Notice will not be electronically mailed via ECF to:**

**EXHIBIT 1**
Case 14-03285-rld    Doc 63    Filed 10/06/15

**Subject:** 14-03285-rld ap Motion To Stay

**Date:** Tuesday, September 22, 2015 at 4:13:17 PM Pacific Daylight Time

**From:** BKECF_LiveDB@orb.uscourts.gov

**To:** BNC_orb@orb.uscourts.gov

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.

**U.S. Bankruptcy Court**

**District of Oregon**

Notice of Electronic Filing

The following transaction was received from PAUL B HEATHERMAN entered on 9/22/2015 at 4:13 PM PDT and filed on 9/22/2015

**Case Name:** Daniels et al v. Holman et al

**Case Number:** 14-03285-rld

**Document Number:** 53

**Docket Text:**
Motion To Stay *Enfocement of Judgment* Filed by Defendant James Joel Holman Re: [49] Judgment (HEATHERMAN, PAUL)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Data\LINDA2\PAUL\Holman Appeal\holman.motion extend stay.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=994365958 [Date=9/22/2015] [FileNumber=15940155-0
] [97a386369e1f7be8e88cc3401e3649d433c89534672622f98e721df1a47d58ecf71
82d167eba179c0b507c7bdbe4c63900142940f7d562914aed2a3ec70bda01]]

**14-03285-rld Notice will be electronically mailed via ECF to:**

R HUNTER BITNER, III on behalf of Plaintiff Dwight Daniels
hunter@slindenelson.com

R HUNTER BITNER, III on behalf of Plaintiff Laura Daniels
hunter@slindenelson.com

PAUL B HEATHERMAN on behalf of Defendant Candice Evangeline Holman
ljkerr@bendbroadband.com, paul@bendattorneys.com

PAUL B HEATHERMAN on behalf of Defendant James Joel Holman
ljkerr@bendbroadband.com, paul@bendattorneys.com

DARIAN STANFORD on behalf of Plaintiff Dwight Daniels
darian@slindenelson.com, Amanda@slindenelson.com

**EXHIBIT 1**
Case 14-03285-rld   Doc 63   Filed 10/06/15

DARIAN STANFORD on behalf of Plaintiff Laura Daniels
darian@slindenelson.com, Amanda@slindenelson.com

**14-03285-rld Notice will not be electronically mailed via ECF to:**

**EXHIBIT 1**
Case 14-03285-rld    Doc 63    Filed 10/06/15

Below is a Judgment of the Court. If the judgment is for
money, the applicable judgment interest rate is: "0.36%"

_Randall L. Dunn_
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) |
| | ) Bankruptcy Case |
| James Joel Holman, | ) No. 14-35381-rld7 |
| Candice Evangeline Holman, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| _____ | ) |
| | ) |
| Dwight Daniels, | ) Adv. Proc. No. 14-3285-rld |
| Laura Daniels, | ) |
| | ) |
| Plaintiffs, | ) JUDGMENT |
| | ) |
| v. | ) |
| | ) |
| James Joel Holman, | ) |
| Candice Evangeline Holman, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Based upon the findings and conclusions set forth in the

Memorandum Opinion issued contemporaneously herewith,

IT IS ORDERED and ADJUDGED that:

1. Judgment shall be in favor of defendant James Joel Holman

on the plaintiffs' claim under 11 U.S.C. § 523(a)(2)(A), and said claim

Page 1 - JUDGMENT

**EXHIBIT 2**

1   is dismissed with prejudice.

2         2.   Defendant James Joel Holman's debt to plaintiffs is

3   excepted from his discharge under 11 U.S.C. § 523(a)(2)(B).

4         3.   Judgment shall be in favor of defendant Candice Evangeline

5   Holman on the plaintiffs' claim under 11 U.S.C. § 523(a)(2)(B), and said

6   claim is dismissed with prejudice.

7                                ###

8   cc:      R. Hunter Bitner, III
           Darian Stanford
9         Paul B. Heatherman

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2 - JUDGMENT

**EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

In re:                              )
                                    )
JAMES JOEL HOLMAN and CANDICE ) Case No. 14-35381-rld7
EVANGELINE HOLMAN,                  )
                                    )
            Debtors.                )
_____)
DWIGHT and LAURA DANIELS,           ) Adversary Proceeding
husband and wife,                   ) No. 14-03285-rld
                                    )
            Plaintiffs,             )
v.                                  )
                                    )
JAMES JOEL HOLMAN and CANDICE )
EVANGELINE HOLMAN,                  )
                                    )
            Defendants.             )
_____)

TRANSCRIPT OF PROCEEDINGS

VOLUME II of II

Before the Honorable Randall C. Dunn


Thursday, August 13, 2015


Hilton Garden Inn


Bend, Oregon

8:49 a.m.



REPORTED BY:  Alane R. Harrold, RPR, CSR

**EXHIBIT 3**
Case 14-03285-rld   Doc 63   Filed 10/06/15

1    There is a date of February 1st, 2011, right?

2        A.    Where are you looking?  Oh, I see it, yes.

3        Q.    There you go.

4              Tell me what this financial statement

5    includes.  What information is included in it?

6        A.    I believe it contains information about

7    assets and -- generally assets, liabilities, income

8    and expenses.

9        Q.    Okay.  Does that include yours and your

10   businesses?

11       A.    No.  This is a Personal Financial Statement.

12       Q.    But it also includes information about the

13   worth and value of your business as well, doesn't it?

14             THE COURT:  Well, you know, there's been a

15             little ambiguity about that.  My understanding,

16             subject to being corrected, is that it's not the

17             value of the business, it's the value of the

18             Holman equity ownership in the business.

19             MR. BITNER:  Let's clarify that.

20   BY MR. BITNER:

21       Q.    Mr. Holman, go to -- you're on page 1, right?

22       A.    Yes.

23       Q.    I want to say it's on the right-hand side,

24   but let me get there.  Left-hand side.

25             You see under assets, closely held business,

1   do you see that?

2        A.    Yes.

3        Q.    $5 million, right?

4        A.    Yes.

5        Q.    What does that number represent?

6        A.    That represents what the assets of that

7   business were in terms of worth, I suppose.

8        Q.    What business are we talking about?

9        A.    For us, in my mind, that would have

10   represented our PCS, all the PCS entities.

11        Q.    Is that your net value worth, or is that a

12   gross worth?

13        A.    That is what I believe would be more of the

14   gross.  It's worth the gross.

15        Q.    Go to page 2 real quick.

16        A.    (Complies with request.)

17        Q.    Up top.  Do you see interests in closely-held

18   business?

19        A.    Yes.

20        Q.    Again, that's the same number, same $5

21   million number?

22        A.    Yes.

23        Q.    Does that represent the same thing there as

24   it did on page 1?

25        A.    Yes, I believe so.

EXHIBIT 3
Case 14-03285-rld    Doc 63    Filed 10/06/15

1    package that we would send to potential investors.

2    He didn't want to see that or the tax returns, so I

3    believe I just sent him this, which is more general

4    in nature.

5         Q.   Let's take a look at this.  Let's start with

6    the business side you were talking about.  You said

7    this is the worth of the PCS business or something, I

8    think is what you said.

9              How did you determine that your businesses

10   were worth $5 million?

11        A.   A couple ways in layman's terms looking at

12   the cash flow and the revenues of the business kind

13   of relative to what they would sell for in our

14   industry, what that market value might be.

15             You know, a little bit more concretely, there

16   is a firm in Portland, a pretty reputable business

17   appraisal firm called Marones Young, and they had

18   done a formal business appraisal.  I don't remember

19   when, but it was previous to this.  And I believe --

20   I don't recall the specific amount, but, again, seven

21   or eight years, but I believe even a couple years

22   prior or a year prior to it was somewhere in the 4.4

23   million range, 4.2, 4.1.  We had grown.

24             We were, even with this new business coming

25   in that was unhealthy, we ourselves were healthy at

1    the time and pretty optimistic that we were going to

2    put them together.  And I thought the $5 million was

3    pretty solid.

4       Q.   So that I understand, your business had been

5    evaluated a year or two before?

6       A.   At some point previously.

7       Q.   Read your deposition testimony.  All right.

8    "I believe at the time we had a previous formal

9    business appraisal a year or two prior.  I don't

10   remember the exact date."

11          So you utilized that business appraisal and

12   extrapolated out of that forward, correct?

13      A.   Yes, that was part of the business basis.

14      Q.   Well, I asked you during your deposition what

15   the basis was.  That's the only one you gave me.

16          Were there others?

17      A.   I think what I just said, that we had kind of

18   grown since that point.

19      Q.   You didn't look at any tax returns, right?

20      A.   In terms of determining the value of the

21   business?

22      Q.   Yes, sir.

23      A.   In terms of determining the business, no,

24   value of the business, no.

25      Q.   You didn't look at the -- I'm trying to use

EXHIBIT 3

1      Q.    The monthly payments were more than $1,980,

2   weren't they?

3      A.    Yes.

4      Q.    And as you sit here today, you know that the

5   mortgage balance was more than $450,000 in February

6   of 2011, don't you?

7      A.    As I sit here today, yes.

8            THE COURT:   Just for my purposes, where is

9      the -- oh, the $1980 figure is right above the

10     $450,000.   My copy is hard to read.

11           MR. BITNER:   That's why I had the big blowup

12     here, but it's hard to use.

13   BY MR. BITNER:

14     Q.    So we have a market value of the house of

15   $775,000 and a mortgage balance of $450,000.

16           You would agree that would represent you have

17   equity in the home of $325,000, right?

18     A.    Yes.

19     Q.    And that's $25,000 more than the amount of

20   the loan being discussed, correct?

21     A.    Yes.

22     Q.    How many mortgages did you have on the home

23   at the time?   Did you have two?

24     A.    Yes.

25     Q.    Do you know as you sit here what the balances

1    were on those mortgages as of February 2011?

2        A.    Yes.

3        Q.    What were they?

4        A.    $540,000.

5        Q.    Would you agree with me, sir, you had a

6    mortgage in the amount of $292,140 with Bank of

7    America and $250,403 with Cutting Edge Credit Union?

8        A.    That sounds very close.

9        Q.    If you go to Plaintiff's Exhibit 10, I'll

10   show you where I got those numbers.

11       A.    From?

12       Q.    From your answers to interrogatories.

13             Do you see that?

14       A.    Yes.

15       Q.    So you agree with those numbers?

16       A.    Yes.

17       Q.    So that's total of $542,543.

18             Would you agree with me?

19       A.    Yes.

20       Q.    How did you determine that was the balance?

21       A.    In terms of our response to interrogatories?

22       Q.    Yes, sir.

23       A.    When we answered this interrogatory, we got

24   statements.

25       Q.    Mortgage statements?

1    A.    Yes.

2    Q.    As you sit here today, have you done any work

3    to determine what your house was actually worth in

4    February of 2011?

5    A.    No.

6    Q.    Same question.  As you sit here today, do you

7    know that your house was worth $775,000 as of

8    February 2011?

9    A.    It very well could have been worth that.

10   More?  I don't know.  Depends on the buyer.

11   Q.    So moving away from this for a moment, am I

12   correct that you originally offered as security

13   personal property -- well, I'll break this up.

14         Personal property?

15   A.    Yes.

16   Q.    Business assets?

17   A.    UCC.

18   Q.    The house, the primary house --

19   A.    Yes.

20   Q.    -- rights of the primary house?

21   A.    Yes.

22   Q.    The beach house?

23   A.    Let me go back and clarify to the business

24   assets.

25         One conversation -- because the UCC seems to

1    2011?

2         A.    I believe that to be fairly accurate.

3         Q.    Based on what, based on a listing price

4    across the street from your house, based on --

5              THE COURT:  Well, he's testified that it was

6         based on a combination of factors, the listing of

7         the property across the street, the improvements

8         and maintenance work that had been done on the

9         home.  And he, of course, discounted his value

10        from what the property was listed across the

11        street.  So he has answered that question.

12             MR. BITNER:  Fair enough.

13             MR. HEATHERMAN:  He also testified that he

14        reviewed some mortgage statements.

15             MR. BITNER:  I'm going to absolutely object

16        to that.

17             THE COURT:  No, he did not, because the

18        amount that was owed on the two mortgages was

19        approximately $100,000 off and so he didn't review

20        the statements.  His number was based on his

21        recollection; it was a general recollection.  That

22        was what he testified.

23             MR. BITNER:  I believe what Mr. Heatherman is

24        talking about is he did say he looked at documents

25        in answering interrogatories a couple years later.

1      A.   Yes.

2      Q.   So, in hindsight, it might have been more

3  accurate to say "I don't know" and not play it safe

4  by saying, "Well, therefore I deny"?

5      A.   Yes.

6      Q.   You also testified about your general

7  knowledge of the mortgage amounts.

8           Insofar as that, who in your household

9  reviews bills and mortgage statements?

10      A.   I do.

11      Q.   And during the time back in 2011, early '11,

12  when you had prepared the PFS, were you receiving

13  mortgage statements?

14      A.   Yes.

15      Q.   And on a periodic basis, were you reviewing

16  them?

17      A.   Yes.

18      Q.   Now, the second, was that fixed or did it

19  fluctuate, the balance on the second?

20      A.   It would fluctuate based on advances or

21  payments made.  And often the payments were just made

22  automatically by the company or my controller

23  directly to the credit union, so it was a line and so

24  it would go up and down.  I would generally look and

25  see if anything had been paid or if there was

1          down -- did you have any actual knowledge when you

2          put the 450 grand?

3      BY MR. BITNER:

4          Q.    I'm now asking:    Did you have any actual

5      knowledge when you wrote down or typed in $450,000

6      that it was true?

7          A.    Specific to that, no.

8          Q.    Are you telling the Court today, sir, that

9      the Danielses or Mr. Daniels had told you they were

10     going to loan you $300,000 before they looked at any

11     of your financial information?

12         A.    Yes.

13             MR. BITNER:    Nothing further.

14             THE COURT:    Anything further?

15             MR. HEATHERMAN:    Just one question.

16                    RECROSS-EXAMINATION

17     BY MR. HEATHERMAN:

18         Q.    When we talked about general knowledge and

19     the circumstances surrounding the listing of the

20     mortgage balance information on the PFS, we talked

21     about that.

22             What about the UCC-3, the termination that

23     happened later in the summer of '11?  My question is:

24     At the time you made the loan -- excuse me.  At the

25     time you received the loan from the Danielses, did

1    need to look deeper into this including the title

2    report. They looked at that. Okay. That told

3    you that you had mortgages back in '03.

4         THE COURT: Well, I disagree with you, but

5    it's a limited disagreement I have with you.

6         If I'm the Danielses looking at this

7    financial statement fresh, from their perspective

8    there's one figure that jumps out at me when they

9    have been assured by a trusted friend as to the

10   character of the Holmans. You've got a net worth

11   here of $5,948,500. You can afford to be a little

12   bit forgiving with respect to a $300,000 loan

13   where you're dealing with an excess of $5,948,500

14   of assets over liabilities. Even without

15   security, if there was really that value -- and

16   it's being represented in a financial statement --

17   that ought to be adequate to support, so the rest

18   is arguably gravy. And, clearly, the residence

19   based on the math reflected 325,000 equity, so

20   beyond the overall strength of the financial

21   statement, which is very strong, it looks gold-

22   plated on the surface. There appears to be enough

23   equity in the home property alone that if it has

24   to be sold, they're going to get paid in full.

25        MR. BITNER: That's how it appeared. I agree

1    readily marketed.  And, again, when you've got
2    almost $6 million asset equity versus liabilities
3    reflected on the statement, that allows for some
4    flexibility unless someone is a total fraud.

5    And we all heard Mr. Holman's testimony today
6    he'd had a testament from a close friend of the
7    Danielses as to his worthiness.  There was no
8    basis on the record before them at the time to
9    assume that Mr. Holman was a total fraud, and Mr.
10   Holman would deny that he was.

11   MR. HEATHERMAN:  Certainly, Your Honor.  And
12   I do to that point believe there was testimony
13   that Mr. Daniels in part or perhaps both
14   plaintiffs at least in part relied upon their
15   pastor friend in making their decision because
16   they got a person that he trusted -- turned out to
17   be maybe a bad referral -- but they entrusted him
18   at the time just as most lay people would entrust
19   their friend or loved one for referral to a third
20   party.  And so in part they testified that that
21   pastor or friend -- I don't know if he was a
22   pastor or not -- but Christian friend was in part
23   the basis for their reliance.  It wasn't all about
24   this financial statement.

25   THE COURT:  All right.  In those

EXHIBIT 3
Case 14-03285-rld   Doc 63   Filed 10/06/15

1    to deceive, my client testified he had no intent

2    to scam these people, he had no intent to set them

3    up and say I'm going to withdraw this UCC later on

4    or I'm not going to pay the loan back or I know --

5    I actually know that my mortgage is larger, but

6    I'm going to deflate it anyhow, there is no

7    testimony to that on those elements.

8            THE COURT:   No.   But there is no question the

9    very worst thing for Mr. Holman in the record here

10   is that with information available to him from

11   monthly statements to confirm the balances of the

12   loans secured by the residence property, that he

13   went ahead and pulled out of the air a figure that

14   was approximately $100,000 too low.   I find that

15   very problematic.   So that's his biggest problem

16   in my view with regard to the evidence as to the

17   financial statement, and I will be considering

18   that.

19           MR. HEATHERMAN:   I would like to --

20           THE COURT:   I'm not going to rule orally

21   today.   I want to think about it, I want to review

22   the authorities again, and I will look at *Field*

23   *vs. Mans*.   But that one really bothers me.

24           MR. HEATHERMAN:   If there is no duty to

25   investigate, then I would submit that nobody would

1      MR. BITNER:  I was going to make a brilliant

2    point.  You just took it right away.

3      MR. HEATHERMAN:  I respect the point that she

4    is not an institutional lender, she's not B of A,

5    but the same principles apply, if anything, more

6    so, for someone who doesn't have $20 billion like

7    Wells Fargo because I would think you would -- a

8    reasonable person is not just going to go off the

9    PFS for $300,000 in third position.  They're going

10   to want to investigate.

11     MR. BITNER:  I disagree.

12     THE COURT:  But where the financial

13   statement -- I'm going to have to evaluate this,

14   and I'm not prepared to rule today.

15     But where the financial statement says assets

16   over liabilities are in excess almost $6 million

17   in a sense the security is almost superfluous.

18   But even so, the residence purported to have

19   enough value alone to pay off the debt if were any

20   problems.

21     And, as I said, the most problematic aspect

22   of it is the amount owing on the first and second.

23   The evidence from Mr. Holman as to how he came to

24   his valuation, it's at least plausible.  And when

25   we're doing valuations, the testimony of a lay

1                       C E R T I F I C A T E

2

3

4        I, ALANE R. HARROLD, Registered Professional

5   Reporter and Certified Shorthand Reporter for the

6   State of Oregon, hereby certify that at the time and

7   place set forth in the caption hereof I reported in

8   Stenotype all testimony adduced and other oral

9   proceedings had in the foregoing matter; that

10  thereafter my notes were reduced to typewriting under

11  my direction, and that the foregoing transcript, pages

12  1 to 329, both inclusive, constitutes a full, true and

13  accurate record of all such testimony adduced and oral

14  proceedings had, and of the whole thereof.

15

16

17      WITNESS my hand and CSR seal at Bend, Oregon,

18  this 29th day of September, 2015.

19

20

21             *Alane R Harrold*
                ALANE R. HARROLD

22                Certified Shorthand Reporter
                Certificate No. 98-0354

23                Expires:  12/31/2017

24

25

**CERTIFICATE OF SERVICE**

I hereby certify that I served the attached **DECLARATION OF R. HUNTER BITNER, II IN SUPPORT OF CREDITORS'/PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO AMEND FINDINGS AND MOTION TO EXTEND STAY** on the following person(s) on the date indicated below:

> Paul B. Heatherman
> Law Offices of Paul Heatherman PC
> 250 NW Franklin Ave, #402
> Bend, OR 97701
> *Of Attorneys for Debtors-Defendants*

By the following indicated method(s):

☒ By **emailing** full, true, and correct copies thereof to say attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☒ By notice of electronic filing using the PACER ECF filing system.

☒ By causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address (as listed above on the date set forth below.

DATED: October 6, 2015.

SLINDE NELSON STANFORD

By: /s/ R. Hunter Bitner II
    Darian A. Stanford, OSB No. 994491
    R. Hunter Bitner II, OSB No. 011146
    *Of Attorneys for Dwight and Laura Daniels*

Page 3 – CERTIFICATE OF SERVICE